IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

LAWRENCE GENE JACKSON,      §
      Plaintiff,      §
            §
v.      §      No. 3:21-cv-00149-G (BT)
            §
DALLAS COUNTY JAIL, et al.,      §
      Defendants.      §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Plaintiff Lawrence Gene Jackson, an inmate in the Dallas County Jail, filed a *pro se* civil rights action under 42 U.S.C. § 1983. The Court granted Jackson leave to proceed *in forma pauperis* but withheld issuance of process pending judicial screening. Ord. (ECF No. 20). Now having completed the judicial screening, the undersigned recommends that the Court dismiss Jackson's amended complaint for failure to state a claim upon which relief may be granted. In his pleadings, Jackson attempts to raise habeas claims under 28 U.S.C. § 2254. The Court severs those claims and directs the Clerk of Court to open a new habeas case for the severed claims.

I.

On January 22, 2021, the Court received a handwritten submission from Jackson with the heading "Plaintiffs [sic] Statement of Facts." Compl. 1 (ECF No. 3). His claims are difficult to discern, and the pleading is generally hard to follow. *Id.* This is especially so because Jackson makes numerous seemingly unrelated

1

allegations and statements. *Id.* For example, Jackson alleges that he was not taken to the hospital to have contaminate flushed from his eyes. *Id.* 1. He further alleges that he knocked out a front tooth and broke off an upper tooth. *Id.* Jackson claims that the Southwest Eye Clinic of Dallas can confirm he has advanced-stage glaucoma. *Id.* He further claims that the officer was "truthful enough" about how he injured his hand when he stated that it came from punching the defendant. *Id.* Jackson alleges that the injury to the officer's hand did not come from a human bite, even though the doctor in Irving falsified the criminal report by stating that it was caused by a human bite. *Id.* Jackson further alleges that the doctor's medical report was falsified to undermine Jackson's civil *pro se* proceedings, *Lawrence Gene Page v. Chris Williams & Michael Cassath. Id.*

Jackson claims that his 1996 conviction for assault on a public servant involved a "cover up" against the Dallas Police Department. *Id.* 2. According to Jackson, he was a party to a lawsuit in Judge Buchmeyer's court, and the Police Department was represented by twelve attorneys. *Id.* Jackson alleges that the Police Department's attorneys wanted Jackson to meet with them to settle the lawsuit. *Id.* Jackson further alleges that he used the phone number for his aunt, Dorothy Estelle Jefferson, as a court contact. *Id.* He contends that, at that time, he "was home at [the] time like now." *Id.* Jackson further contends that the Police Department found this out and told his aunt to call the police if Jackson came to her house for the mail "or call from federal court judge." *Id.*

Next, Jackson claims that his aunt's daughter was a crack prostitute, and her grandson sold crack. *Id.* He further claims that his aunt had approximately seven girlfriend prostitutes. *Id.* Jackson alleges that his aunt made 125 complaints to the Dallas Police Department after his lawsuit was thrown out, and according to Jackson, after his lawsuit was thrown out, the police made his "aunt sell and move out." *Id.*

Jackson claims that Justin White, a parole officer at the Dallas office, has been accepting payments from one of the defendants in Jackson's lawsuit, Mr. Hill or Jackson's attorney, Clark E. Birdsall, or someone from the Dallas County Court system to violate Jackson so he will go back to prison. *Id.* 3. Jackson further claims that it has been done in retaliation because he was not convicted in 2001, and he never received a final sentence, which made his conviction void. *Id.* Jackson alleges that the court knew it did not have jurisdiction to either keep him in jail or send him to prison. *Id.*

Jackson contends that he has written to Chief Marian Brown and informed her as a party to the David Ruiz lawsuit. *Id.* 4. He further contends that his case was in Galveston, Texas, *Lawrence Gene Jackson v. McClotta TDC No. 316154. Id.* Jackson claims that he was the "offender" filing the lawsuit against the "prison jail," and he asked for monetary damages. *Id.* Jackson further claims that he did not have family support, he could not make a trial scheduled by the judge, and his claim was ultimately dismissed. *Id.*

3

Jackson alleges that he "lost med dept," and he told Sheriff Brown. *Id.* The prisoner director in Washington, D.C. "have David who pass in 2008 on Gorree Unit us [sic] classified as [a] polical [sic] prison activist." *Id.* "That we had to be kept on FC Protective Custody while [he] slip through Loop in 2002." *Id.* Jackson further alleges that he came back to prison as Page, but not Jackson. *Id.* He contends that the prison system "knew anyway and they sent [him] to Wallace Unit in West TX at [the] time [he] was 54 years old on [the] unit [with] kids 18 through 28." *Id.*

Jackson claims that he watched Boys, Tango Blast, Crip, and Blood stomp, rape, and kill little kids while Senator Whitmeyer was overseeing gang violence at the Texas Department of Criminal Justice (TDCJ). *Id.* 5. Jackson further claims that there was pressure from the federal prison director in Washington who contacted TDCJ about a letter Jackson wrote him about the ongoing violence. *Id.* Jackson contends that he wrote Senator Whitmeyer, and he was told to file "free world" charges for gang violence, assaults, murder, and rape. *Id.* According to Jackson, that is how the laws making prisons safe were passed and prison rape was eliminated. *Id.*

Jackson alleges that, on December 24, 2020, he was assigned to "5th Fl 7 pod o-cell" when gang members found out he was behind the anti-gang legislature. *Id.* Jackson further alleges that the gang members were mad at those back on parole "[b]ecause they [were] taken to units and offered to be release[d] on parole if the[y] sign[ed] gang denunciation papers to be released from prison that was

4

God's Brain Storm not." *Id.* Jackson contends that it turned the prison into a model prison system for prisons across the United States. *Id.*

Jackson next claims that someone "leak[ed]" to the gang members in the N-Cell. *Id.* 6. Then, an inmate in the P-cell slammed the door of Jackson's cell when he was attempting to lock them out, and Jackson broke his right index finger. *Id.* Pod Officer MS Wayne had handed the inmate in Q-Cell something in a long brown paper like a cigar wrap sold in head shops and a small plastic baggy he later learned was cigarette tobacco and "kash weed." *Id.* Jackson alleges that the inmates had been in the Q-Cell smoking it, and when Jackson was taken to medical for x-rays, Officer Wayne told the doctor that the inmates who assaulted Jackson were smoking "weed." *Id.*  Jackson claims that an officer had him file an affidavit about what took place, but Jackson explains he refused to give the officer a copy of what he wrote. *Id.*

Jackson alleges that "they" tried to move him to the West Tower on the fifth floor in a pod with gang members in their teens to their middle twenties. *Id.* Jackson claims there were no bottom bunks available, and with his broken finger and ribs, there was "no way" he was going to attempt a top bunk. *Id.* In a final thought, Jackson concludes, "To end jail violence on senior citizens." *Id.*

Jackson alleges that, on December 24-29, 2020, he was kept in a hold-over cell with only one blanket and the air conditioning turned wide open. *Id.* 9. He alleges that was denied lunch for three days when the jail served a peanut butter sandwich because he would die if he ate a peanut butter sandwich. *Id.* Jackson

claims that he suffered "life endangerment," "cruel and unusual punishment," and "deliberant [sic] indifference." *Id.* Based on this conduct, Jackson seeks $100.00 for retaliation by Defendant White. *Id.*

Last, Jackson presents a "Proposal to Federal Court Jail Violence By Young gang members House Inmates According to Age Groups." *Id.* 7. In the "Rest of [His] Proposal to [the] Court," he recommends lifting the national ban on inmate smoking in jails and prisons. *Id.* 8.

On January 26, 2021, the Court issued an Order and Notice of Deficiency (ECF No. 4) advising Jackson that his complaint was not in compliance with Federal Rule of Civil Procedure 8(a). He was also advised that, under Federal Rule of Civil Procedure 11, he is required to sign the complaint. Last, Jackson was informed that he did not pay the $402 filing fee or file a proper request to proceed *in forma pauperis*, and his civil rights pleadings were not filed on the appropriate court-approved form.

On March 1, 2021, the Court sent Jackson a magistrate judge's questionnaire (ECF No. 11), and Jackson's response (ECF No. 17) was received on March 12, 2021. In his response, Jackson explained that contaminate got in his eyes on May 28, 2001, during an incident at the Econo Lodge, a motel in Irving, Texas. MJQ 2 (ECF No. 17). Jackson alleges that officers Chris Williams and Michael Cassata followed him upstairs, and Officer Cassatta ran up behind him and pushed him into the wall of a room. *Id.* Jackson claims that the officers then attempted to forcefully detain

him. *Id.* In the ensuing altercation between Jackson and Officers Williams and Cassata, Jackson's two front tooth were knocked out. *Id.* 3.

When Jackson was asked about his reference to "Judge Lindsey's court" in the complaint, Jackson explained that he filed a claim in 2018 for malicious prosecution. *Id.* 4. However, Jackson claims that a visiting judge from Abilene "blocked" the exculpatory evidence that proved Jackson was innocent of biting Officer Cassata on his split knuckle. *Id.* Jackson also claims that after he threatened to file a lawsuit against the officers for "false arrest and excessive," Officer Cassata went to the hospital and had the doctor falsify his medical report, noting that Officer Cassata's injury was caused by a human bite in an excessive force "cover up." *Id.* Jackson alleges that the State's attorney asked Judge Bachus to give Jackson 25 years for assaulting a public servant, and these documents are in Judge Lindsey's court file. *Id.*

Jackson explained that in his drug and assault case in 2001, he was erroneously tried by Judge Bachus as "Lawrence Gene Page," as opposed to "Lawrence G. Jackson." *Id.* 5. Jackson claims that his parole officer, Justin White, was told by jail administrators he had to ask for Jackson "in Jackson and not Page." *Id.*

Jackson alleges that in 2018, after he filed a $100 million lawsuit against the Dallas County Court System, White was paid to send him back to prison so Jackson was precluded from pursuing his claim of wrongful conviction. *Id.* Jackson further

alleges that White attempted to prevent him from pursuing his wrongful conviction for the last three years. *Id.*

Jackson contends that in his 1996 case, where he allegedly assaulted a public servant by biting the officer's arm, the case resulted in two hung juries. *Id.* Jackson further contends that Defendant Hill let him "cop out" to two years, but he was not finally sentenced in the 2001 case. *Id.* Jackson alleges, however, that he was sent back to prison for the 1996 conviction. *Id.*

Jackson claims that he wrote Defendant Brown on December "17-19-2020" to let her know he was a political prisoner in 1987 in a prison medical lawsuit against "TDC." *Id.* 7. Jackson also claims that he told Senator Whitmeyer in 2007 to end gang violence to file "freeworld charges" on gang members for assaults and rapes in 2007. *Id.* Jackson contends the Texas Senate passed the "Safe Prison," and in 2008, they passed the Prison Rape Elimination Act (PREA). *Id.* Jackson further contends that he told an unspecified "her" he needed to be put on "P.C." *Id.* Jackson alleges that on December 24, 2020, someone in jail administration leaked the information that he filed anti-gang legislation. *Id.* Jackson further alleges that Officer Wayne came out of the control pod and into the 7 pod and gave an inmate "weed" and tobacco to "jump" him. *Id.* Jackson claims that he went into his cell and an inmate in P-cell slammed his right hand in the cell door, and they kept copies of the affidavit. *Id.* Based on this conduct, Jackson seeks $100 million in monetary damages for mental anguish, pain and suffering, denial of access to the court, life endangerment, an illegal sentence, and illegal confinement. *Id.* 6.

On March 2, 2021, the Court received Jackson's amended complaint (ECF No. 12). The pleading includes writing on a combination of white notebook paper and pages from the court-approved civil rights complaint form, and it is signed. *Id.* In it, Jackson names "Dallas County Jail, Marian Brown," "Officer Wayne, Dallas Sheriff," "Justin White, Parole Board," and Levia Pouncy as defendants. *Id.* 1, 6.

Jackson explains that he was "hopelessly trying" to address "on the merits" blocking Officer Cassata's injury before going to the hospital, where the officer admitted he cut it when punching Jackson in the mouth. *Id.* 2. According to Jackson, Officer Cassata also admitted that the wound was not caused by Jackson biting him. *Id.* Jackson claims that it all started as an "excessive force cover-up." *Id.* Jackson further claims that he was not taken to the judge, and his case was assigned to Judge John Nelms of the 195th Judicial District Court of Dallas after he was convicted in the 194th "Aux Court" by a visiting judge named Bill Bachus. *Id.* Jackson alleges that Judge Bachus found him guilty of "possession control substance manufacturing control substance with intent to believe and assault on public servant." *Id.* Under the heading "State Of Facts," Jackson claims that Judge Horan failed to mention the reason he did not appeal his case was because he was taken before Judge Helms, the court his case was assigned to, for final sentencing. *Id.* 3. Jackson alleges that he should have been taken back before the trial court within 30 days after his trial. *Id.* According to Jackson, Judge Nelms is a judge on the Texas Court of Criminal Appeals. *Id.*

Jackson explains that he completed a sworn affidavit stating that he did not appear before Judge Nelms, and this made both of his sentences void. *Id.* Jackson claims that if he had been finally sentenced and appealed, he would have disclosed what he was "desperately" trying to put together. *Id.* Jackson further claims that Defendant Hill, Defendant Liu, and Defendant Birdsall did not act in concert, and this is simply not true if you look at the initial complaint filed in Judge Lindsey's court. *Id.* Jackson alleges that he also raised the issue of whether the trial court had jurisdiction to detain him or send him to prison "SAFP," but he contends that Judge Horan did not disclose this information. *Id.*

Jackson questions why the Sheriff's Department classified him as Jackson and not Page, and he was sent to prison as Page. *Id.* 4. Jackson claims that if the Court runs "Lawrence Gene Page" through the jail information, not the county clerk's office, there is no listing for Jackson under his "real name." *Id.* According to Jackson, Defendant Hill and his trial attorney, Mr. Birdsall, conspired together after his trial, on November 27, 2001, and used a 1996 conviction he "copped" to in the "punish phase" after the second jury trial was hung and District Attorney Hills let him "cop" out to one year for assault on a public servant. *Id.* According to Jackson, this is the same charge he had in 2001, which made it "easy to falsify" all the 2001 court papers with the 1996 conviction and send him back to prison for the same conviction "with no one wiser to their deception and conspiracy and fraud." *Id.* Jackson alleges that it has taken 20 years to "unravel this illegality plot against [him]." *Id.* He claims this has caused him severe mental duress. *Id.* Jackson

contends that "this discovery falls under newly discovered evidence in Schlup vs. Delo citation omitted." *Id.* Jackson further contends that he "must be allowed to advance on this discovery in todays [sic] claim." *Id.* Jackson alleges that his "last pleading to [the] District Court establish everything raised in today [sic] application against Defendant[.]" *Id.*

Jackson alleges that he filed his claim for malicious prosecution, a tort claim, on November 18 thinking the Court would block the police officers and require them to fill out an injury report before going to the hospital, where Officer Cassata, the arresting officer, had the doctor falsify his medical record. *Id.* 7. Based on this conduct, Jackson concludes that this Court should "[d]ismiss this illegal conviction [he] is being held for[.]" *Id.*

## II.

Jackson's complaint and amended complaint are subject to preliminary screening under 28 U.S.C. § 1915A. That section provides in pertinent part:

> The court shall review . . . as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity [and] [o]n review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(a)-(b).

Under 28 U.S.C. § 1915(e), a district court may also summarily dismiss a complaint filed *in forma pauperis* if it concludes the action is: (1) frivolous or malicious; (2) fails to state a claim on which relief may be granted; or (3) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B). To state a claim upon which relief may be granted, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face[,]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level[.]" *Id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.*" Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### III.

The Court liberally construes Jackson's filings with all possible deference due a *pro se* litigant. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (*pro se* pleadings are "to be liberally construed," and "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.") (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (per curiam) (noting that allegations in a *pro se* complaint, however inartfully pleaded, are held to less stringent standards than form pleadings drafted by lawyers); *Cf.* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice"). Even under this most liberal

construction, however, Jackson's pleadings fail to state a claim upon which relief can be granted.

### 1. Dallas County Jail

It is unclear whether Jackson has named the Dallas County Jail as a defendant. Am. Comp. 1 (ECF No. 12); *see also* Compl. (ECF No. 3). To the extent he has, the Dallas County Jail is a nonjural entity under § 1983. A plaintiff may not bring a civil rights action against a servient political agency or department unless such agency or department enjoys a separate and distinct legal existence. *Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313-14 (5th Cir. 1991). A governmental department cannot engage in litigation "unless the true political entity has taken explicit steps to grant the servient agency jural authority." *Darby*, 939 F.2d at 313 (agency of city government); *see also Lindley v. Bowles*, 2002 WL 1315466, at *2 (N.D. Tex. June 12, 2002) (finding Dallas County Jail is not a proper defendant with a jural existence); *Pantoja v. Dallas County Jail*, 2001 WL 1343437, at *2 (N.D. Tex. Oct. 31, 2001) (concluding neither the Dallas County Jail nor its medical staff and medical department are separate legal entities subject to suit under § 1983). Because the Dallas County Jail is a nonjural entity, the Court should dismiss with prejudice Jackson's claims against it.

### 2. Marian Brown / the Dallas Sheriff

Jackson also names Marian Brown, the Dallas County Sheriff as a defendant.[1] Am. Compl. 1, 6 (ECF No. 12). Jackson alleges that he wrote Sheriff Brown to tell her he wanted to be placed on "P.C." because there were gang members in the prison. *Id.*

Claims lodged against a public official, like the Sheriff, in her "official capacity" are claims against the governmental entity the official represents—in this case, Dallas County. *Hafer v. Melo*, 502 U.S. 21, 27 (1991). For a municipality such as Dallas County to be liable under § 1983, a plaintiff must identify a policymaker, an official policy, and a violation of his constitutional rights whose "moving force" is the policy or custom. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell v. Dep't of Social Services*, 436 U.S. 658, 694 (1978)).

Jackson fails to demonstrate a § 1983 violation here. Even if Sheriff Brown was the official policymaker, Jackson has failed to state that there was an official policy at issue, and that the policy or custom violated his constitutional rights. For these reasons, the Court should dismiss Jackson's claims against Sheriff Brown.

### 3. Officer Wayne

Jackson names Officer Wayne, an officer with the Dallas County Sheriff's Department, as a defendant. Am. Compl. 6 (ECF No. 12). Jackson alleges that on

---

[1] Jackson refers to Marian Brown as the "Chief," but she serves as the Dallas County Sheriff. Am. Compl. 6 (ECF No. 12); *see also* https://www.dallascounty.org/departments/sheriff/1210-2/ (last visited October 8, 2021).

December 24, 2020, Officer Wayne gave gang member inmates "weed" and tobacco to "jump" Jackson for Sheriff Brown. *Id.* Jackson's allegations regarding Officer Wayne are as vague as they are brief. However, he appears to contend that Officer Wayne bribed other inmates to attack him on behalf of Sheriff Brown.

In *Farmer v. Brennan*, 511 U.S. 825 (1994), the Supreme Court held that prison officials violate their duty to protect inmates under the Eighth Amendment when two elements are met. *Id.* at 833; *see also Jason v. Tanner*, 938 F.3d 191, 195 (5th Cir. 2019) (noting *Farmer* held that prison officials have a duty to protect inmates from violence at the hands of other inmates). First, under an objective standard, the deprivation or harm must be sufficiently serious. *Famer*, 511 U.S. at 834. Second, under a subjective standard, the prison official must have been deliberately indifferent to the deprivation or harm suffered. *Id.* Here, even if Jackson has somehow demonstrated he was incarcerated under conditions posing a substantial risk of harm to him, he has failed to plead sufficient facts to suggest that Officer Wayne acted with deliberate indifference to a serious risk of harm to Jackson posed by the other inmates. *See Pierce v. Collier*, 843 F. App'x 619, 620 (5th Cir. 2021) (per curiam) (citing *Legate v. Livingston*, 822 F.3d 207, 210 (5th Cir. 2016)). Therefore, Jackson has failed to state an Eighth Amendment claim against Officer Wayne for failure to protect him from the other inmates. *Id.* (citing *Legate*, 822 F.3d at 209-10; *Coleman v. Sweetin*, 745 F.3d 756, 763 (5th Cir. 2014)).

### 4. Justin White

Jackson names Justin White, a parole officer at District One in Dallas, Texas, as a defendant. Am. Compl. 6 (ECF No. 12). Jackson claims that White has been accepting payments from one of the defendants in Jackson's lawsuit, Mr. Hill or Jackson's attorney, Clark E. Birdsall, or someone from the Dallas County Court system to violate Jackson so he will go back to prison. Compl. 3 (ECF No. 3). Jackson further claims that White falsified papers on June 13, 2016 to "SAFP" a month before "BPP" sent him on July 7, 2016. Am. Compl. 6 (ECF No. 12). Jackson alleges that in 2018, after he filed a $100 million lawsuit against the Dallas County Court System, White was paid to send him back to prison so Jackson was precluded from pursuing his claim of wrongful conviction. MJQ 5 (ECF No. 17). Jackson concludes that White has attempted to prevent him from pursuing his wrongful conviction claim for the last three years. *Id.*

Jackson's allegations against White are difficult to discern. To the extent that Jackson is alleging White falsified conviction paperwork, his claim is *Heck*-barred. In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court held that no cause of action exists under § 1983 for state prisoners who bring civil rights actions for allegedly unconstitutional convictions or imprisonment, or otherwise collaterally attack the constitutionality of the convictions that form the basis for their incarceration, unless the state prisoner can show that the state criminal conviction he is collaterally attacking has been invalidated by a state appellate court, a state

16

or federal habeas court, or some other state authority with jurisdiction to do so. *Id.* at 477.

A civil judgment in Jackson's favor on these allegations would necessarily imply the invalidity of a criminal conviction. Moreover, Jackson does not demonstrate that his conviction has been invalidated. Therefore, any claim against White must be dismissed as *Heck*-barred. *See Toombs v. Massingill, et al.*, 583 F. App'x 359, 359-60 (5th Cir. 2014) (claims that defendants conspired to withhold and destroy potentially exculpatory evidence barred by *Heck*); *Villegas v. Galloway*, et al., 458 F. App'x 334, 337 (5th Cir. 2012) (civil rights claims such as ineffective assistance of counsel, use of perjured testimony and fabricated evidence, and suppression of favorable evidence are barred by *Heck*); *see also Bailey v. Willis*, 2018 WL 3321461, at *6 (E.D. Tex. Jan. 11, 2018) (dismissing as *Heck*-barred claims that officers fabricated affidavits for search warrants and that all defendants "conspired together to 'procure a criminal conviction upon a man that they knew, all along, was innocent'"); *Barnett v. GEO Grp., Inc.*, 2017 WL 3896363, at *4 (N.D. Tex. Aug. 10, 2017), *rep and rec. adopted*, 2017 WL 3887914 (N.D. Tex. Sept. 5, 2017) ("A ruling in favor of Plaintiff's multiple claims that the individual defendants subjected him to an illegal interrogation, that the prosecution withheld exculpatory evidence, that he received ineffective assistance of counsel, and that he was the subject of malicious prosecution, would necessarily imply the invalidity of his conviction."); *Albarado v. City of Abilene, et al.*, 2016 WL 1583772 (N.D. Tex. March 18, 2016) (claims that detective engaged in illegal

interrogation, that prosecutor withheld reports, and that police, prosecutor, and judge engaged in conspiracy barred by *Heck*), *rep. and rec. adopted*, 2016 WL 1572612 (N.D. Tex. April 19, 2016).

Liberally construing Jackson's allegations, as this Court must, *see Erickson*, 551 U.S. at 94, Jackson's allegations against White appear to implicate the provisions of *Heck*, which prevents a civil lawsuit based on an alleged invalid conviction where the conviction has not been overturned. Consequently, Jackson's claims against White should be dismissed with prejudice to being asserted again after the *Heck* conditions are met.[2]

### 5. Leiva Pouncy

Last, Jackson names Leiva Pouncy as a defendant. Am. Compl. 6 (ECF No. 12). Jackson claims that Pouncy was his "PO" on June 13, 2016, when he was illegally sent to "ISF" and "SAFP" under TDCJ # 02071847. *Id.*

This claim must fail because Jackson does not claim that Pouncy was involved in the personal violation of his constitutional rights. To state a § 1983 claim, a plaintiff must "identify defendants who were either personally involved in the constitutional violation or whose acts are casually connected to the constitutional violation alleged." *Woods v. Edwards*, 51 F.3d 577, 583 (5th Cir. 1995); *see Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986) ("In order to

---

[2] "A preferred order of dismissal in *Heck* cases decrees, 'Plaintiffs [sic] claims are dismissed with prejudice to their being asserted again until the *Heck* conditions are met.'" *DeLeon v. City of Corpus Christi*, 488 F.3d 649, 657 (5th Cir. 2007) (quoting *Johnson v. McElveen*, 101 F.3d 423, 424 (5th Cir. 1996)).

successfully plead a cause of action in § 1983 cases, plaintiffs must enunciate a set of facts that illustrate the defendants' participation in the wrong alleged."); *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983) ("Personal involvement is an essential element of a civil rights cause of action."); *see also Crawford v. Pitts*, 2021 WL 2434842, at *2 (N.D. Tex. June 14, 2021) ("A claim of liability for violation of rights under 42 U.S.C. § 1983, regardless of the particular constitutional theory, must be based upon allegations of personal responsibility.") (citing *Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir. 1992)); *Thompson v. Crnkovich*, 2017 WL 5514519, *2 (N.D. Tex. Nov. 16, 2017) ("Without personal involvement or participation in an alleged constitutional violation, or implementation of a deficient policy, the individual should be dismissed as the defendant."). Consequently, the Court should dismiss Jackson's claims against Pouncy.

In sum, Jackson's pleadings are frivolous and fail to state a claim upon which relief may be granted. Jackson's amended complaint should therefore be dismissed because he fails to state a claim upon which relief can be granted.

## IV.

Next, the Court will address the arguments in Jackson's pleadings, which suggest he is seeking to initiate a habeas case. For instance, he claims that the court knew it did not have jurisdiction to either to keep him in jail or send him to prison. Compl. 3 (ECF No. 3). Jackson further claims that he was not properly convicted in 2001, and he never received a final sentence, which made his conviction void.

19

*Id.* He alleges that he suffered a "wrongful conviction." MJQ 5 (ECF No. 17). Jackson further alleges that he was "illegally sentence[ed]" and "illegall[y] confine[d]." *Id.* 6. Finally, he concludes that this Court should "[d]ismiss this illegal conviction [he] is being held for[.]" Am. Compl. 7 (ECF No. 12).

"Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus. An inmate's challenge to the circumstances of his confinement, however, may be brought under [42 U.S.C.] § 1983." *Hill v. McDonough*, 547 U.S. 573, 579 (2006) (internal quotation marks and citations omitted); *see also Pierre v. United States*, 525 F.2d 933, 935 (5th Cir. 1976) ("Simply stated, habeas is not available to review questions unrelated to the cause of detention."). When "a favorable determination . . . would not automatically entitle [the prisoner] to accelerated release, the proper vehicle is a Section 1983 suit." *Carson v. Johnson*, 112 F.3d 818, 820-21 (5th Cir. 1997). When a prisoner brings "both habeas and § 1983 claims," the court must "'separate the claims and decide the § 1983 claims.'" *Patton v. Jefferson Corr. Ctr.*, 136 F.3d 458, 463-64 (5th Cir. 1998) (quoting *Orellana v. Kyle*, 65 F.3d 29, 31 (5th Cir. 1995) (per curiam)).

Jackson presents habeas arguments in his pleadings. Those claims will be severed from the instant civil rights action filed pursuant to § 1983. The Clerk of Court is directed to open a new habeas case pursuant to 28 U.S.C. § 2254 (nature of suit 530), for the now-severed claims and file a copy of the pertinent pleadings (ECF Nos. 3, 12, 17) and this order in that case. The new habeas case should be

assigned to the same District Judge and Magistrate Judge as the instant civil rights case. Finally, all future pleadings related to the habeas matter should be filed in the new case.

V.

For the reasons stated, the Court **SEVERS** the habeas claims in Jackson's pleadings from this civil rights action filed under § 1983. The Court directs the Clerk of Court to open a new habeas case pursuant to 28 U.S.C. § 2254 (nature of suit 530), for the now-severed claims and file a copy of the pertinent filings (ECF Nos. 3, 12, 17) and this order in that case. The new habeas case should be assigned to the same District Judge and Magistrate Judge as the instant habeas case. All future pleadings related to the habeas matter should be filed in the new case.

Finally, the District Court should dismiss the § 1983 action under 28 U.S.C. §§ 1915A and 1915(e)(2)(B). The dismissal of this case counts as a "strike" for purposes of 28 U.S.C. § 1915(g).[3]

Signed October 8, 2021.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

---

[3] As discussed above, the Court recommends dismissal of Jackson's claims against White because they are barred by *Heck*. Cases dismissed as *Heck*-barred count as a "strike" for purposes of 28 U.S.C. § 1915(g). *German v. Baker*, 124 F. App'x 257, 258 (5th Cir. 2005) (per curiam) (cautioning the appellant that a *Heck* dismissal and the appeal of that dismissal "both count as strikes for purposes of 28 U.S.C. § 1915(g)"); *see also Hamilton v. Lyons*, 74 F.3d 99, 102 (5th Cir. 1996) ("A § 1983 claim which falls under the rule in *Heck* is legally frivolous unless the conviction or sentence at issue has been reversed, expunged, invalidated, or otherwise called into question.").

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).